This afternoon is 412-0986, Saperdas et al. v. Country Casualty Insurance Company. Donna Saris, your appearance for the appellant. Erin Laughter, you are here, sir. And Laura Peterson, Stanley Freeman. Ms. Peterson, you will be arguing first, is that correct? For 18 minutes. And Mr. Freeman will make a special and limited appearance of 2 minutes. Sounds good. Mr. Lawley, you may proceed, sir. Thank you, your honors. Counsel. Today we are discussing the application of a very simple statute to a very simple set of facts. The facts are laid out in all of the briefs. So very briefly, my client purchased insurance policy through Country Insurance through the agent, Mr. LaSaris, the defendant. The minor child, Jonathan Jackson, was injured in an accident. After settling with the at-fault insurance company for their policy limits, an underinsured motorist claim was made with Country and denied on the basis that Ms. Day and her minor son, Jonathan Jackson, were not named as insureds on their policy. This was a surprise to my client as they had requested that Ms. Day and Mr. Jackson, by extension, be added to the policy of insureds. A lawsuit was filed claiming that Mr. LaSaris had failed to provide the insurance as requested by Mr. Scopertis. And I'm suing to the duty established by Section 2201, 735 ILCS 5-2-2-0-1, which states very plainly that an insurance producer shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured. A motion to dismiss was filed and granted alleging that there was no duty on behalf of Mr. LaSaris to the plaintiffs, notwithstanding this statute as he was an insurance agent and not an insurance broker. The argument by defendants is that insurance brokers have fiduciary duties to their insurance companies and their employers, while insurance agents have duties to only their employers and not to insureds, while insurance brokers would have duties to an insured or proposed insured. However, nothing in this statute limits its application to insurance brokers. It discusses fiduciary duties in Section B, noticing I note that it does limit fiduciary duties, but specifically in subsection D states that the provisions of this section do not limit or release an insurance producer from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation, or failure to procure any policy of insurance. The distinction between brokers and agents in common law concerns where a fiduciary duty is directed, whether to the insured or to the insurance company. It does not necessarily apply to the statutory duty. The defendants' position supporting their motion to dismiss was that this distinction survives the statute and therefore Mr. Loseros owes no duty to the plaintiffs. However, that distinction is focused on fiduciary duties. This case is not about fiduciary duties. This case is about negligence and negligence in breach of a duty established by a statute. The distinction does not stand for the fact that there are no duties on behalf of an agent to an insured. A case which predates this statute by many years, Talbot, cited by the plaintiffs and defendants in their briefs, establishes a duty of reasonable promptness in procuring an insurance policy. In that case, an insured had requested a life insurance policy. The insurance agent had been negligently slow in placing it, the coverage, and as a result the proposed insured passed away and benefits were denied. The court held that simply because he was an agent was not going to be barred from having a duty. This was based on a principle that one who enters into an affirmative undertaking to perform a service is required to exercise reasonable care in performing it. No discussion of insurance versus brokers or agents versus brokers. No discussion of fiduciary duties. It's ordinary negligence for not being prompt in filing this coverage and it would result in misfeasance if they unreasonably delay. Now, the holding in this case was limited to timeliness in filing the policies, but the prospect that an insurance agent owes absolutely no duty of care to a proposed insured was never the case. It was never the case before this statute and it's certainly not the case now. Moving on to the statute. I've recited the plain language of the statute. Clear and ambiguous language. The standards for reviewing that are laid out in the briefs. And, in fact, there's been no Supreme Court case which has interpreted the statute, whether it applies to agents or brokers. There's been no 4th District case interpreting whether it applies to agents or brokers. There was a 4th District case considered, which is not present, which I'll touch on in a moment. However, there are a few 1st District cases. And one I'd like to point out is Melrose Park Sundries versus Carlene. In that case, a business owner starting a liquor store had requested everything he needed for his new liquor store. Liquor liability, other such coverages. But the agent who he purchased the insurance from did not provide workers' compensation coverage. This was not specifically requested by the proposed insured. In their analysis, the court held, I'll quote here, Pursuant to the clear and unambiguous language of Section 2-2201A, the insurance agent had a duty to exercise ordinary care and skill in procuring the coverage requested by Melrose Park. The court went on to hold there was no duty in this case because he had not requested workers' compensation coverage. That's factually distinct from this case. Melrose Park clearly acknowledges that this statute section establishes a duty of ordinary care and skill on behalf of an insurance agent. Melrose Park mentions in passing that Carlene was an agent, but does not discuss the distinction of broker versus agent. It simply refers to him as an insurance producer, just as the statute does. Because Melrose Park was not considering a fiduciary duty or an allegation of a breach of a fiduciary duty, there was no reason to discuss the factors that consider whether an agent was acting as an agent or a broker. It was simply held that there was no duty because there was no coverage requested. In fact, the court goes on to say that the plaintiff's argument was distilled to the fact that the agent had a fiduciary duty, and then held there was no fiduciary duty. We're not alleging a fiduciary duty in this case. In light of the plain language of the statute, as well as Melrose Park, the plaintiffs believe that it's clear that there would be a duty owed by Defendant Laceris to the proposed insurance. And further, I would like to note that this court has considered this issue in a case that was more factually similar to this one than Melrose Park, which is the case of Country Insurance Company v. Carr. Now, this case does not stand as precedent today, as it was vacated by the Supreme Court to a settlement. Well, as a technical matter, counsel, none of our prior decisions are presidential regarding us. Oh, correct. You know, I mean, we don't have to adopt what we said last week, if we were so inclined. Sometimes by mistake that happens. Yeah. But, you know, your point is well taken with regard to the trial court. Exactly. And arguing to Judge Ford, but not to us. Well, and I would just like to note that Judge Ford acknowledged that Carr was not binding. He had to follow the first district, which had held that this distinction would apply. I don't believe that following Melrose Park necessarily resulted in the decision that Judge Ford made either way. However, to note that it was not, noting that it was not binding on him, but he had, so he felt the need to follow the first district. I will note, however, that Judge Ford believed that the Carr district was better reasoned and better decided than the first district cases. And I would agree. The Carr case was a case that involved the same statute, the same analysis that there was, in fact, a duty established by 2201A. And then also, the court went through the same similar list of cases that defendants have cited in this case and noted that they were distinguished because these were cases that involved ultimately fiduciary duties, whereas this case is very clearly a case of ordinary negligence and procuring insurance policy, which was requested by Scoburgus to add his fiancée and her son, who were sharing a household with him and using his vehicles as insurance on his policy. Taking the facts that we've alleged in our complaint as true, or in the light most favorable to the plaintiff, we've clearly stated the cause of action under that statute pursuant to plain language of the statute, the interpretation of the statute of Melrose Park, although the case was ultimately decided different, and also the reasoning as applied at Carr. One final district is considered the issue, and that's the case of Moore, which has been cited by both sides. Moore was an interesting case because the majority did not reference 2201A, taking it kind of at face value that the case concerned fiduciary duties rather than an ordinary care duty. The dissent disagreed with the majority to the extent that the plaintiff's complaint could have been read as applying or alleging a duty under 2201A, and if the complaint was read that way, a duty would apply and a cause of action would stand. Really, the difference between the majority and the dissent in Moore was not that there was no duty in 2201A, it was whether the plaintiff was alleging that duty. In this case, again, we are clearly alleging that duty. This is not a case of fiduciary duties, as in Melrose Park, or as in Moore. It is much more in line with the Carr case. Mr. Schiffer has requested his family be covered under his insurance policy. It was not provided when they made the underinsured motorist claim. It was denied. I would like to note, again, I would like to recognize that the 2201A does not define an insurance producer. Melrose Park doesn't nitpick as to whether an insurance producer refers to a broker or agent, and this is raised in the defendant's brief, so I'd like to address that. The insurance code itself defines an insurance producer as anyone licensed to sell insurance in the State of Illinois, which would certainly include the defendant, Mr. Laceris, and that is in 215 ILCS 5-500-10. The defendants cite several First District cases which include in the definition of insurance producer insurance brokers. Again, those are cases which involve insurance brokers. An insurance broker may be an insurance producer all the time, but not all insurance producers are insurance brokers. Simply citing cases which include brokers as the definition of insurance producers does not necessarily mean that this statute only applies to brokers and fiduciary relationships. Also, the plain language of this statute, again in Section D, it is a limiting statute to the extent that it discusses fiduciary duties, but it specifically makes note in Section D that while limiting the scope of liability of an insurance producer under the standards governing the conduct of a fiduciary, the provisions of this section do not limit or release an insurance producer for liability for negligence. And that's what this case is about. It's negligence and not a fiduciary relationship. It's simply the breach of duty in ordinary care and actually placing and procuring this insurance policy requested by the plaintiffs. Accordingly, the plaintiffs have appropriately stated a duty and cause of action in their complaint. The motion to dismiss was properly denied and it should be reversed. Thank you, counsel. Ms. Peterson. May it please the court, counsel. Counsel. I wanted to start out by addressing some of the cases that plaintiffs' counsel raised. First of all, I think we need to have two important facts before the court. There is no dispute that Mr. Laceris is a captive agent, that he is a country company's agent. He can only sell insurance for country or one of the country-related companies, all under country financial. Because that is important when we're talking about this broker versus agent distinction. The second thing is, it's not as simple as those cases where an agent has said, get me some insurance, and the agent doesn't get any insurance. Because we're not trying to say that an agent can't be held liable for that. Because the Talbot case does say, if you don't act within a reasonable time and do what you're supposed to do. Now in this case, though, there is a question as to what is it exactly being requested for the fiancee. She was added as a driver on Mr. Scoperta's policy as opposed to being added as a named insured. So in terms of the facts here, it's not as simple. I think I sense almost a chance that, well, if this doesn't work out with 2201, we've still got a chance. Because he didn't get insurance. But they did have her for insurance. She was a driver on the policy. So just to get that out of the way. Then I've got a question about her son. He was the one who was injured. Correct, Your Honor. So was insurance ever requested for him? That, no. And I think if you can tell from plaintiff's counsel's argument when he had said, I didn't write down the exact words, but something along the line of implicitly for the son because in the household. But my client, again, we have to accept the facts as they're pled in the complaint. It is my client's position that none of this was ever requested. The situation was there was a car accident. They found out that his fiancee was driving and country added her as the driver because you can't have someone driving the cars and getting in an accident and then not getting paid for it. But that's not before the court. The allegation, I believe, is that he says his client requested that she be added as an insured for coverage. In terms of that De Carlini case, that case, again, goes when they're talking about the language in there and that is distinguishable because we are talking about a broker in that case. And the court in this that we need to remember is when we're looking at amendments to statutes and changes, it's against the backdrop of what the common law was. The common law was very well established before that statute was enacted that we've got a difference between duties of the captive agent and the broker. And claims counsel referenced that this is a limiting statute. And indeed it is. It was created to limit fiduciary duty claims but still allow these common negligence claims against the broker, which was known in the case law as an insurance producer. Okay, I was going to ask you then, why didn't they just say broker instead of producer? And then what about the definition in the insurance code? Well, and I would say that is a very good question. The first thing is the insurance code is different than the code of civil procedure. So I understand looking to that for the decision, but when you have a well-established definition and an understood term, the case law that we cited with the common law, that's what you use. Now, additionally, we cited the case of United General Title Insurance v. Amerititle. And in that situation, they pointed out that insurance producer wasn't defined in the code of civil procedure. They were interpreting another provision of the code of civil procedure, but then they went on to say that common law does, in Illinois, an insurance producer is used synonymously with the term insurance broker. Likewise, the AYH Holdings case that we cited, say an insurance producer, i.e. an insurance broker. Kelsa, let me ask you this question. How factually does this case differ from Carr? Probably not a whole lot when it comes down to it. I would agree with that assessment. It's essentially an insured is not country saying there's not coverage. The insured is unhappy, and they say, hey, my agent didn't do what I wanted him to do. Whose court did Carr reject in your position? Yes, you did. Hi. Just checked the briefs again, and all you say is Carr is in presidential, as I explained to Mr. Lauder, had it not been vacated, it wouldn't be presidential in the sense of binding upon us. But you provide no explanation at all, no analysis at all, as to why we shouldn't follow what we said in Carr. Well, I think the simple reason is that the Supreme Court, after hearing oral argument on Carr, there was a settlement and they vacated the decision as being moot. They could have simply dismissed the appeal. If they would have dismissed the appeal, the Fourth District decision would have still been, that opinion would have been presidential. And the cases that we did cite in our brief mention that. Is this kind of like when the Supreme Court decides not to grant a petition for leave to appeal? Gee, Judge, see, look at that. That's an inference that they agreed with what we said. No? I think that this would be different, though, Your Honor, because here they had two courses of action that they could have taken when they already heard the argument. And if they thought they didn't like our decision, then they could have said, so we're vacating it because we disagree with it. Well, they did vacate the judgment rather than dismissing the appeal in that. And it was vacated as moot. So we have to draw an inference of disapproval from the Supreme Court. I would suggest yes. Is that what case stands for that? That because a case is moot, vacating and dismissing constitutes disapproval by the Supreme Court of the underlying decision. And there's not, Your Honor. The cases that we cite require the inference because they're saying that when the issue becomes moot, typically we'll dismiss it. But if it's inappropriate to do so, we will vacate it. So it is an inference that's made. We did not find case law that supports the truth. On the merits, why shouldn't we follow Carr? On the merits, because when you look at the plain language which was really argued in 2201, and as maybe you recall from Carr, that almost morphed when we were before the trial court. 2201 wasn't even an issue really. It was kind of a side issue. And it became a very big issue on appeal, such that then it was further interpreted, things were delved into, and additional facts were discovered. I still believe that the plain language, it is inconsistent if you feel the need to look somewhere else, but clearly it's a limiting statute. If you look at the backdrop, which we are required to do, the presumption is that the legislature was aware of the case law, and that if the legislature wanted to change that case law, they needed to be very clear in doing it. And they weren't. If the case law said there's a difference between agents and brokers, and if the legislature passes this statute which eliminates that difference, why isn't that a manifestation of their intent to change it? I don't think this statute eliminates the difference. That's the thing. It is not defined in that statute. They simply say insurance producer, which does create a problem for us now, because the common law tells us an insurance producer is a broker. And certainly when you look at the reason why that statute was passed and who introduced it, it was the independent insurance agents, which that is brokers because they're independent, not captive. They are the ones who put forth the legislation. They are the ones that wanted it, because they're saying we're getting tagged with all these fiduciary claims. It's too broad. It's too much. And that is what this statute was designed to do, to limit those fiduciary duty claims, but still allowing insurers to say, wait a minute, you still owe me a duty because you are my agent. I come to you to make decisions and work with me and my interest. And that is why the statute says, sure, you're going to still be able to maintain those kind of claims against your insurance producer, which is a broker under common law. We can't interpret a statute to change the common law unless the terms of the statute mandate that construction. And there is nothing in this statute that would mandate that construction. The Supreme Court said in 2005 in the People v. Jones case, a statute will not be interpreted to affect a change in settled law unless its terms clearly require such a construction. First District 2002 case, if it covers an area formerly covered by common law, the statute must be construed as adopting common law unless there is clear and specific language showing that a change in common law was attended by the legislature. And that's Revolution Court. Does the insurance producer incorporate or cover within that designation both agent and broker? For purposes of this civil procedure statute, no. Why not? Because if you look at the backdrop, the common law interpretation of what insurance producer was. As defined in the insurance code, though, it all says that someone is licensed to sell, solicit, or negotiate insurance. Isn't that what it says? That's correct, Your Honor. And for purposes of the insurance code, true. And for purposes of that definition, that would include both brokers and agents. So we have to conclude that that's what they said, but they didn't mean it? Because you're looking at two different acts that are being enacted at different times, different purposes and different people doing it. Maybe like Your Honor had said, sometimes we're not necessarily the same. We make sometimes a different decision on a different week. And I honestly, I truly believe that if the insurance, that the Brokers Association had put forth this statute, we're seeing what was said like that. Is that really part of the legislative history? Which lobbyist group put forth what was pushing for the enactment? Does that inform our analysis? Well, the language that we cited in our brief that says that this is what they were looking to do to limit their liability, I believe that then that does inform the court. Because the court can look at legislative history. My question is, is that something that is part of the legislative history that should inform this court? Which interest group is pushing for a particular statute or a legislative amendment? If it's part of, I'd say yes. If the legislative history says this isn't an initiative. How about this is a concept for interpreting legislation. Why don't we just look to see what the words say? And if we look at the plain language. Interesting concept. Well, the plain language says producers. But there's no definition. And all they had to do was define the term to mean broker if that's what they wanted to do. Or to define it to mean broker and agent. And we wouldn't even be facing this. Agreed. But they did it. And we are. Well, but here's the problem I have with that. If I want a statute to cover insurance producer, why can't I use that as a term of art since that's the term as described in the insurance code? Well, and Your Honor, if you want. You're saying, yes, it's your insurance producer, but not for purposes of this statute. Why should we draw this limiting, described interpretation of a term when, as defined, there is no such limiting interpretation in the statute? And again, there's not. And therefore, why do you make the limitation because you're looking at another statute that says that when the common law that was based upon what this particular statute is talking about. See, counsel, I think you're going two steps removed. I'm a former legislative draftsman. That was my first job at a law school. And I remember when you're looking at terms, in terms of art especially, trying to find, does this exist someplace in the statutes already? And here we're talking about insurance. And we use the term, as mentioned here, about insurance producer. And sure enough, there it is. Defined in the insurance code of all places. Now, you could say, well, they could have defined it here too. But they use this as a term of art. Why should they have to? And it seems to me, as we said in Carr, hey, it means what it says. Well, and then I think in that situation, it still doesn't carry the day for plaintiff. Because you can then still, if you want to interpret it that way, you can say, OK, then what we're looking at is looking at Section D, where they talk about eliminating certain fiduciary liabilities. And then it says, the provisions of this section do not limit or release an insurance producer from liability for negligence. In other words, then, if we look at that, what they're saying is we're going to leave intact what that common law is. We're not going to change what it is. So the liability that you would have for negligence would be, who is the principal you're acting for? Insurance producer. Well, I think Mr. Lauder says his claim is for negligence in the procurement or the failure to procure the insurance. That's what he says this is a lawsuit about. Why wouldn't that be covered, then, under Section D? Well, because, again, if you're going to interpret it, who is their principal? My Mr. Lucero's principal would be country. So if he screwed up in procuring insurance and did something that favored the insurance and got country in a mess, then he'd be liable to country for that. Where in this situation, if he was an independent broker, his duty is to his principal to be insured. And then in that situation, the liability would be to them in procuring the insurance. The clear intent of that statute, if you read it as a whole, and you have to read that as a whole. You can't read Section A in isolation. It clearly intends to say, we're limiting liability. This is a limiting statute. This is why we created it. We're not trying to create new liability. We're not trying to broaden causes of action. Because if that was the intent the case law establishes, you need to be very clear with that language in the statute. And there's nothing doing that here. There's absolutely nothing other than referencing insurance producers which are not defined. What do you mean when you say we have to be absolutely clear? But at the end of the statute, comma, and we mean it? I'm not, other than enacting the statute with this language, what else were they required to do? Well, I would say that because you need to have compelling, excuse me, let me look for the exact standard here. If you have clear and specific language showing that the change in common law was intended, I would say that you would have language in there. It could have easily been remedied, as Justice Pope said, by defining what they meant by insurance producer in the statute. But if they don't want to do that, they should have had a provision that says captive insurance agents will owe duties to not only their company, but also to the insureds in procuring blah, blah, blah, blah. So if the definition of insurance producer, which appears in the insurance code, were subsection E of this statute, we have no problem? I still think you need more to overcome what the common law is. We have to put it in the statute. By the way, we're intending here to overcome the common law distinction that existed, but short of that, wide to the left legislature. Sorry, you didn't get the job done. I don't think it needs to go that far. You would know obviously far better than me. Well, not this thing, but that one. It wouldn't be like this if you did. Again, my position on this is, you've got to look at what they had at the time before them when they were drafting this. What was going on? What was the law? And if you look at what that was, and you look at how this statute is written, it simply codifies the law as it was and makes it clear that you can't have a breach of fiduciary duty claim against brokers, again, if you are codifying that law, except in certain limitations, but you can still have negligence claims against them. I believe that the trial court made this decision correctly. I think that this court should affirm the trial court's decision. Thank you, counsel. Mr. Freeman? May it please the court, counsel. Counsel. I don't think there's any dispute in this case that if the agent, Tom Losaris, did not owe a duty of care to the plaintiffs, my client country casualty should be dismissed under the respondent superior theory. What if Mr. Lauder is correct that Mr. Losaris owed a duty, why would a respondent superior apply? It would apply. I'm not going to try and make that argument. Thank you for your candor. But for the reasons suggested by counsel for Losaris, argued here today and then advanced in a brief, I would ask that the trial court dismissing count two country casualty be affirmed. Thank you. Mr. Lauder, any rebuttal, sir? May it please the court, counsel. Again, your honor, we have no dispute that Mr. Losaris was an agent of country insurance. And we are not claiming that the statute 2201A, or 2201 in its entirety, is abolishing any distinction between brokers and agents. That distinction is going to remain for fiduciary duties. Those are the kind of duties that are directed to a principal. I'm not sure why it would matter who the principal of an agent is if we're looking at negligence. And to the extent that it does, I read section A of the statute, an insurance producer shall exercise ordinary care in renewing, procuring, binding, or placing coverage requested by an insured or proposed insured. There are two parties involved in that statute, a producer and a proposed insured. That would be where the duty would be directed. And this is, again, a negligence type of duty, a duty of ordinary care and skill. Again, I would like to address the definition of insurance broker or insurance producer in the insurance code. Again, Judge, you kind of stole my thunder. It's the insurance code. It's a reasonable place to look for how you're going to define a term and a statute about insurance and the liabilities that may exist on behalf of an agent or a broker. That statute existed as well as the common law at the time the statute was written. The cases interpreting this statute, including more, Melrose Park and even Carr, do not address the definition of insurance producer as being applied to brokers. It simply uses the term insurance producer as it exists in the statute. And I would like to, again, bring up the case of Talbot. Talbot was a limited holding about promptly filing insurance, but I think it's very important for the purposes of realizing that this distinction between brokers and agents does not ever mean that the agents owe no duties. There's still the elements of negligence, which are protected by Subsection D and identified in Subsection A. There's still a duty of ordinary care directed to the insured. In that case, Talbot, he was an insurance agent. He had a duty to the plaintiff. It didn't matter that he was an agent acting for another principal. The same is true here. And beyond that, I would like to, again, note that it sounds like the definition of insurance producer is almost where this turns, and it would be very helpful if it was defined here in this section. The legislature has defined it in an insurance code covering insurance law in general, and there's no reason to not think that this statute would have the knowledge of that statute as it was written. And then finally, this doesn't refer to brokers or agents. There's nothing in here about it. It was aware of the common legislation between brokers and agents and wanted to clarify that it was going to be applying to one and not the other. It could have done so, and they chose not to. Importantly, Mr. Luceras was acting as an insurance producer, owed a duty of ordinary care to my clients when they requested insurance, and the facts alleged are true, breached that duty, and the motion to dismiss should be reversed as the plaintiffs have made a statement for a cause of action. Okay. Thank you, counsel. We'll take this matter under advisement. The recess is concluded.